UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| David J. Ulrich,<br><br>        Plaintiff,<br><br>v.<br><br>Alejandro Mayorkas,[1] Secretary,<br>Department of Homeland Security<br>(Transportation Security Administration),<br><br>        Defendant. | Civil Action No. 1:20-11123-PBS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

**Introduction**

In his Amended Complaint, Plaintiff David Ulrich contends that employees of the Transportation Security Administration (TSA), a component of the Department of Homeland Security, denied him a reasonable accommodation and discriminated against him due to a disability by suspending, and ultimately revoking, his security clearance, which led to his removal. Assuming Mr. Ulrich, who is *pro se*, intends to allege that the denial of a reasonable accommodation, revocation of his security clearance, or his eventual removal from the Federal Air Marshal Service (FAMS) violates the Americans with Disabilities Act—or its federal counterpart, the Rehabilitation Act[2]—the Amended Complaint must be dismissed pursuant to Fed. R. Civ. P.

---

[1] Alejandro Mayorkas became Secretary of the Department of Homeland Security on February 2, 2021, https://www.dhs.gov/news/2021/02/02/alejandro-mayorkas-sworn-secretary-homeland-security, and is hereby automatically substituted for his predecessor in office pursuant to Federal Rule of Civil Procedure 25(d).

[2] The Americans with Disabilities Act does not apply to employees of the federal government, *see*

12(b)(1). This Court should follow the guidance of other courts, who have adopted the rationale of *Department of the Navy v. Egan*, 484 U.S. 518 (1988), and held that they lack jurisdiction over claims that require review of security clearance determinations.

The Court should also dismiss the claim under Fed. R. Civ. P. 12(b)(6), or in the alternative, grant summary judgment for Defendant. Mr. Ulrich's allegations fall short of the applicable pleading standards, because he has not alleged what his disability was, whether it substantially impaired a major life activity or who knew about it, let alone that the challenged actions were taken because of that disability. Moreover, to the extent he claims that the TSA improperly denied him a reasonable accommodation or removed him from federal service because of a disability, he did not properly exhaust his administrative remedies.

**Background**

Mr. Ulrich is a former Federal Air Marshal.[3] Amended Complaint (ECF 16) at 4. On May 2, 2016, Mr. Ulrich's then-worksite, the Boston Field Office of the FAMS, was selected for random drug and alcohol testing. *See* Ex. 1 (ECF No. 19-1).[4] Mr. Ulrich was selected for testing and took

---

42 U.S.C. § 12111(5)(B)(i), but the same standards apply to claims brought under the Rehabilitation Act. *Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 11 n. 1 (1st Cir. 2004).

[3] FAMS is a division of the TSA.

[4] The exhibits cited in this case have been attached to the Declaration of Christopher Smoot, which has been filed separately as ECF No. 19. "The attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002). As for motions brought under Fed. R. Civ. P. 12(b)(6), while generally a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment, there is

> a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint. When the complaint relies upon a document, whose authenticity is not challenged, such a document merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss.

a breathalyzer. *See id; see also* Ex. 2 (ECF No 19-2). The results of the breathalyzer exceeded the levels acceptable for Mr. Ulrich's position. *See* Ex. 1. After the breathalyzer test was complete, Mr. Ulrich "asked about the possibility of a blood test." Ex. 1.

Mr. Ulrich's Top Secret security clearance was suspended effective May 9, 2016, "based on potentially disqualifying information regarding [his] Alcohol Consumption." *See* Ex. 3 (ECF No. 19-3); ECF 16 at 3. The next day, Mr. Ulrich's supervisor proposed an indefinite suspension due to the suspension of his security clearance. *See* Ex. 4 (ECF No. 19-4). Citing TSA Management Directive 1100.88-1 ("Law Enforcement Position Standard and Hiring Requirements"), the supervisor explained that "any individual being considered for an approved law enforcement position must meet and maintain eligibility requirements for a Top Secret security clearance." *Id.* Further, citing TSA Management Directive 1100.75-3 ("Addressing Unacceptable Performance and Conduct"), the supervisor noted that "an employee may be placed on indefinite suspension when an employee's security clearance has been suspended, denied, or revoked, and a security clearance is a condition of employment or otherwise required for the position." *Id.* TSA placed Mr. Ulrich on indefinite suspension on June 2, 2016. Ex. 5 (ECF No. 19-5); ECF 16 at 3.

On June 27, 2016, TSA's Office of Security, Personnel Security Section revoked Mr. Ulrich's security clearance. *See* Ex. 6 (ECF No. 19-6); ECF 16 at 3. After a review and appeals process,[5] management at the Boston Field Office proposed Mr. Ulrich's removal on January 2,

---

*Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33–34 (1st Cir. 2001) (cleaned up).

[5] The TSA's Office of Security, Personnel Security Section revocation letter of June 27, 2016, notified Mr. Ulrich that he could reply to the Chief Security Officer regarding his revocation. Further, if the Chief Security Officer upheld the determination to revoke Mr. Ulrich's clearance, Mr. Ulrich had the opportunity to appear the decision to the Department of Homeland Security (DHS) Security Appeals Board (SAB). *See* Ex. 6, pp. 4-5. Mr. Ulrich did appeal the revocation to the DHS SAB, which upheld the decision to revoke Ulrich's clearance.

2018, due to his inability to maintain a Top Secret security clearance. *See* Ex. 7 (ECF No. 19-7). As explained in the proposed indefinite suspension, "[t]he ability to obtain and maintain a Top Secret Clearance is a condition of employment as a [Federal Air Marshal]." *Id.* Once "the revocation of [Ulrich's] access to classified information and security clearance became final," Mr. Ulrich's ability to maintain his position as a Federal Air Marshal was impacted. *Id.* Mr. Ulrich was notified of the final decision to remove him from federal service on February 7, 2018.[6] *See* Ex. 8 (ECF No. 19-8); ECF 16 at 3.

On May 23, 2016, Mr. Ulrich initiated contact with an Equal Employment Opportunity (EEO) counselor regarding the issue of whether TSA discriminated against him or subjected him to a hostile work environment because of disability by ordering him to take a drug or alcohol test, suspending his security clearance, suspending him indefinitely, and notifying him of a determination to revoke access to classified information. *See* Ex. 9 (ECF No. 19-9) at 2. A Final Order entered dismissing Mr. Ulrich's claims on June 11, 2019. *Id.* at 3. Mr. Ulrich appealed that order to the Equal Employment Opportunity Commission's Office of Federal Operations (OFO), which affirmed the Final Order on March 13, 2020. *See* Ex. 10 (ECF No. 19-10).

On March 23, 2018, Mr. Ulrich contacted an EEO counselor for a second time regarding the incidents that led to the revocation of his security clearance in 2016 as well as subsequent, related actions taken by the TSA regarding his security clearance. *See* Ex. 11 (ECF No. 19-11) at 2. On May 15, 2018, the TSA informed Mr. Ulrich that EEO counseling had concluded and that he had a right to file a formal complaint. *Id.* On July 18, 2018, Mr. Ulrich filed a formal complaint, which was one calendar day late. *Id.* at 3. On April 10, 2020, the EEOC administrative judge dismissed his case for failure to act within the timeframe required, and a Final Order affirming the

---

[6] Mr. Ulrich appealed his removal to the Merit Systems Protection Board, which on June 17, 2020, affirmed the agency's decision to remove him.

4

administrative judge's decision entered on May 12, 2020. *Id.*

On June 12, 2020, Mr. Ulrich filed this lawsuit. ECF No. 1. On November 11, 2020, he moved to amend his complaint. ECF No. 8. On February 4, 2021, he filed an Amended Complaint in which he alleged employment-related disability discrimination. ECF No. 16 at 2.

**Argument**

**I.    The Court does not have subject-matter jurisdiction to review determinations regarding security clearances.**

"It is a bedrock rule that a party seeking to invoke the jurisdiction of a federal court must bear the burden of demonstrating the existence of such jurisdiction." *Gordo-Gonzalez v. United States*, 873 F.3d 32, 35 (1st Cir. 2017) (citation omitted). Where, as here, a defendant makes a facial challenge to subject matter jurisdiction, "[t]he pleading standard for satisfying the factual predicates for proving jurisdiction is the same as applies under Rule 12(b)(6)—that is, the plaintiff must state a claim to relief that is plausible on its face." *Id.* (cleaned up). "As a result, an order granting a motion to dismiss at the pleading stage is appropriate only when the facts adumbrated in the plaintiff's complaint, taken at face value, fail to bring the case within the court's subject-matter jurisdiction." *Id.* (citation omitted).

Here, Mr. Ulrich's claim, as articulated in the Amended Complaint, revolves around a security clearance determination that was made by the TSA. He alleges that: 1) on May 9, 2016, his security clearance was suspended; 2) on June 2, 2016, management placed him on indefinite suspension; and 3) on June 27, 2016, his security clearance was revoked, which led to his ultimate removal. *See* ECF No. 16 at 3. Courts have held, however, that employees cannot challenge such security clearance determinations in federal court.

Indeed, in 1988, the Supreme Court held that Executive Branch security clearance decisions cannot be reviewed by the Merit Systems Protection Board because they are committed

to the "broad discretion" of the agency responsible. *Department of the Navy v. Egan*, 484 U.S. 518, 529 (1988) (*Egan*). In that case, the plaintiff had been hired into a Secret-clearance-level position within the Navy and was working limited duties pending the outcome of his security investigation. *Id*. at 521. Upon receipt of an intent to deny his clearance due to criminal convictions and alcohol abuse, the plaintiff challenged the intent to deny, asserting, in short, that he was sufficiently rehabilitated from both activities. *Id.* Despite the plaintiff's assertions and accompanying character references, he was denied a security clearance and eventually fired because "[w]ithout a security clearance, [he] was not eligible for the job for which he had been hired." *Id*. at 522. The Merit System Protection Board upheld the agency's removal action, but the Court of Appeals for the Federal Circuit "reversed the Board's decision that it had no authority to review the merits of a security-clearance determination underlying a removal." *Id*. at 524. The Supreme Court reversed, holding that the Board did not have authority to review the substance of an underlying security clearance determination while reviewing an adverse action. *Id*. at 823-827.

In so doing, the Supreme Court observed that the power to control access to information bearing on national security "flows primarily" from the President's Article II powers under the Constitution, and that power has been delegated to Executive Branch agencies in a series of Executive Orders. *Egan,* 484 U.S at 527-528. The Court cited, in particular, Executive Order 10,450, which requires agencies to ensure that government appointments are "clearly consistent with the interests of the national security." *Id*. at 528 (citing Exec. Order 10450, §§ 2 and 7). Further, the government has a "'compelling interest' in withholding national security information from unauthorized persons in the course of executive business." *Id*. at 527 (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980)). Observing that "the grant of a clearance requires an affirmative act of discretion on the part of the granting official," the Supreme Court explained:

> [a] clearance does not equate with passing judgment upon an individual's character. Instead, it is only an attempt to predict his possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information. It may be based, to be sure, upon past or present conduct, but it also may be based upon concerns completely unrelated to conduct….

*Egan*, 484 U.S. at 528. Such determinations involve an effort to "define not only [an] individual's future actions, but those of outside and unknown influences," an endeavor the Court found to be "an inexact science at best." *Id*. at 529. "Predictive judgment" of this sort "must be committed to the broad discretion of the agency responsible." *Id*.

The Supreme Court further explained:

> Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of just a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk.

*Egan*, 484 U.S. at 529. The Court found this conclusion to be "fortified" by the fact that the "clearly consistent" with national security standard under the Executive Order established a very wide margin of error in favor of national security and that this standard would be inconsistent with review under the "preponderance of evidence" standard applicable in civil cases. *Id*. at 531.

Although no district court in Massachusetts has applied *Egan*, the District of New Hampshire has. In *Peterson v. Department of the Navy*, 687 F. Supp. 713 (D.N.H. 1988), a plaintiff sought review of a Merit System Protection Board final order supporting his termination due to the loss of his security clearance due to his history of minor motor vehicle violations and substance use and abuse. *Peterson*, 687 F. Supp. at 714. Peterson argued that his was, at heart, a discrimination claim—that he was denied a security clearance because of his alleged handicap—which took his case outside of *Egan*'s bright-line rule that an agency's clearance decision was not subject to judicial review. *Id.* at 715. The government asserted that, under *Egan*, the complaint

must be dismissed, and district court agreed, summarizing *Egan* as follows:

> Mr. Egan was denied a security clearance based on his convictions for assault and gun possession and his admitted drinking problem. Without the security clearance, he was not eligible for the job for which he was hired, and reassignment to a nonsensitive position was not possible at the facility. Accordingly, the Navy discharged him.

*Peterson*, 687 F. Supp. at 715. The district court further concluded that:

> notwithstanding the discrimination claim, this action is controlled by *Egan*. Plaintiff claims he was denied a security clearance because of his alleged handicap. A trial de novo of this claim would require the Court to undertake a substantive review of the validity of the agency's reasons for denying the clearance. This type of review was expressly forbidden by *Egan*.

*Id*.

If Mr. Ulrich is alleging that he lost his security clearance due to the agency's failure to accommodate a medical condition,[7] *Peterson* is instructive. Mr. Ulrich appears to claim that the denial of a reasonable accommodation led to the suspension and eventual revocation of his security clearance and subsequent loss of his job. *See* ECF No 16 at 3. As in *Peterson*, litigating Mr. Ulrich's discrimination claim would require this Court to undertake a substantive review of the agency's clearance determination, which is foreclosed by *Egan*.

*Egan*'s prohibition on substantive review of security clearance decisions has been extended to a Federal Air Marshal. In *Hamilton v. Trans. Sec. Admin*., 240 F. Supp.3d 203, 206 (D.D.C. 2013), a district court, relying on *Egan*, denied a plaintiff's motion for a temporary restraining order/preliminary injunction seeking to set aside the revocation of his security clearance and to reinstate him into his position. The district court in *Hamilton* reasoned:

> To the extent that his claim is that the revocation of his security clearance—which has resulted in an indefinite suspension and proposed termination from his position as a Federal Air Marshal—was retaliation for filing complaints with EEOC … he has no chance of success on that claim.

---

[7] Ulrich does not allege with specificity which reasonable accommodation was denied or which disability he has. *See* ECF 16 at 4.

*Hamilton*, 240 F. Supp.3d at 205. After transfer to the Eastern District of Virginia, the agency successfully moved to dismiss for lack of subject matter jurisdiction. In granting the agency's motion, the district court in *Hamilton* observed: "Following the well-settled rule established in *Egan*, the Fourth Circuit has concluded that federal courts are generally without subject-matter jurisdiction to review an agency's security clearance decision." *Hamilton v. Trans. Sec. Admin.*, Civil Action No. 1:16-1413, 2016 WL 10586433, *1 (E.D. Va. Dec. 16, 2016) (internal citation omitted), *aff'd*, 682 Fed. App'x 192 (4th Cir. 2017).

For all these reasons, the Court should follow the guidance provided by *Egan* and dismiss the claims relating to the TSA's security clearance determination in the Amended Complaint under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction.

**II.     The Court should dismiss the disability discrimination claims under Fed. R. Civ. P. 12(b)(6) because Mr. Ulrich has not set forth a sufficient factual predicate for them.**

In evaluating a Rule 12(b)(6) motion, the court takes "as true the allegations of the complaint, as well as any interferences that can be drawn from them in [the plaintiff's] favor." *Justiniano v. Walker*, 986 F.3d 11, 19 (1st Cir. 2021) (cleaned up). That principle is applied by "first, isolating and ignoring statements in the complaint that simply offer legal labels and conclusions," and then "second, taking the complaint's non-conclusory, non-speculative facts as true, drawing all reasonable inferences in the non-movant's favor, and evaluate whether they plausibly state a claim for relief." *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (cleaned up). This standard "is not a 'probability requirement,' but instead 'asks for more than a sheer possibility that a defendant has acted unlawfully,' – so if we can't infer from the well-pleaded facts 'more than the mere possibility of misconduct,' then the complaint has not shown 'that the pleader is entitled to relief.'" *Justiniano*, 986 F.3d at 19 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-9 (2009)).

First, Mr. Ulrich alleges that he "was denied a reasonable accommodation for a disability he received while deployed to Afghanistan and Iraq. TSA and FAMS management were fully aware of his disability and denied his request for a reasonable accommodation." ECF 16 at 4. This allegation fails to pass the first part of the 12(b)(6) examination explained in *Zell*; asserting simply that he was denied a reasonable accommodation for a disability is a bare legal conclusion. Without more, it fails to state a claim.

Further, a failure-to-accommodate claim under the Rehabilitation Act requires a showing that (1) Ulrich suffered from a disability within the meaning of the statute; (2) that he was a qualified individual able to perform the essential functions of his job either with or without the accommodation; and (3) that despite knowing about the disability, the TSA did not offer him a reasonable accommodation for the disability. *E.g., Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, 127 (1st Cir. 2017) (affirming grant of summary judgment for employer after concluding accommodation was reasonable); *Alvarado v. Potter*, 813 F. Supp.2d 247, 253-257 (D.P.R. 2011) (granting summary judgment on failure-to-accommodate claim where plaintiff did not show that he suffered a disability under the Rehabilitation Act). Here, however, Mr. Ulrich does not allege facts that would satisfy the first two elements of this analysis. Further, Mr. Ulrich does not allege how he was denied a reasonable accommodation, what the reasonable accommodation would have accomplished, what his disability[8] was, or who at TSA knew about it.

Without more information, Mr. Ulrich's Amended Complaint falls short of this Circuit's pleading requirements. Accordingly, the Amended Complaint must be dismissed for failure to state a claim. And although Mr. Ulrich could potentially amend his complaint for a third time to

---

[8] In one of his administrative proceedings, Mr. Ulrich identified the disability as "gastroesophageal reflux disease." *See* Ex. 10 at 1. However, he does not in the Amended Complaint allege facts regarding this impairment or that show that it substantially limited a major life activity.

allege those facts, such amendment would most likely be futile, because he did not exhaust his administrative remedies in a timely fashion.

**III. This Court should dismiss or enter summary judgment for Defendant on the disability discrimination claims because they are time barred.**

Mr. Ulrich has alleged: 1) that FAMS denied him a reasonable accommodation; and 2) that FAMS discriminated against him on the basis of a disability by suspending and revoking his security clearance, which ultimately led to Mr. Ulrich's removal. ECF No. 16 at 3. Mr. Ulrich did not properly exhaust his administrative remedies regarding either claim.

A. <u>Mr. Ulrich did not exhaust his administrative remedies regarding his failure-to-accommodate claim</u>.

Generally, "a *federal employee* who brings an action under the Rehabilitation Act must exhaust administrative remedies before proceeding to court." *Bartlett v. Department of the Treasury*, 749 F.3d 1, 8 (1st Cir. 2014) (citation omitted) (emphasis original). "In order to exhaust administrative remedies, an employee must contact an EEO counselor within forty-five days of the alleged discriminatory act to attempt an initial informal resolution of the matter." *Bangura v. Shulkin*, 334 F. Supp.3d 443, 446 (D. Mass. 2018) (citing *Velazquez-Rivera v. Danzig*, 234 F.3d 790, 794 (1st Cir. 2000); 29 C.F.R. § 1614.105(a)(1)). "Failure to do so serves as a bar to bringing a claim in court." *Id.* (citing *Velazquez-Rivera*, 234 F.3d at 794).

Here, Mr. Ulrich does not allege that he ever exhausted a claim for the denial of a reasonable accommodation. Accordingly, if he wants to press that claim now, he cannot.

B. <u>Mr. Ulrich did not exhaust his remedies in a timely manner regarding his other disability discrimination claims.</u>

An aggrieved employee can file a civil action against the head of the department or agency that discriminated against him or her within 90 days of receipt of notice of final action on the complaint so long as the employee exhausted available administrative remedies. *Vazquez-Rivera*

*v. Figueroa*, 759 F.3d 44, 47 (1st Cir. 2014) (citations omitted) (affirming dismissal of claims for failure to properly exhaust). "This exhaustion requirement is no small matter; it 'is a condition to the waiver of sovereign immunity' and thus 'must be strictly construed.'" *Id.* at 47-48 (quoting *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 94 (1990)).

The Rehabilitation Act forbids discrimination on the basis of disability against otherwise qualified individuals working for an executive agency or a program receiving federal funds. *Vazquez-Rivera,* 759 F.3d at 47–48 (citing 29 U.S.C. §§ 791, 794). "To enforce this prohibition, the Rehabilitation Act provides for administrative and judicial recourse for federal employees who filed a complaint of disability-based employment discrimination and were aggrieved by either the final disposition of their complaint or the failure to take final action." *Id.* at 47 (citing 29 U.S.C. § 794a(a)). To do so, the Rehabilitation Act incorporates the procedures set forth in Title VII of the Civil Rights Act of 1964, which in turn has authorized the EEOC to issue rules and regulations to that end. *Id. (citing* 42 U.S.C. § 2000e–16(b)).

"The EEOC, in turn, has issued 29 C.F.R. § 1614.106(b), which provides that an administrative complaint of discrimination 'must be filed within 15 days of receipt' of the notice of the right to file." *Vazquez-Rivera,* 759 F.3d at 47. "EEOC regulations further provide that 'the agency shall dismiss an entire complaint' if it 'fails to comply with applicable time limits,' including the fifteen-day window established by § 1614.106." *Id.* (citing 29 C.F.R. § 1614.107).

Here, the administrative records show that Mr. Ulrich did not file a charge with the EEOC under time limits set forth in EEOC regulations. *See* Ex. 11. To the extent that he wanted to pursue any of his claims initially raised to an EEO counselor on March 23, 2018, he had to convert them into a formal EEO complaint within 15 days of receiving his Notice of Right to File a Formal

Complaint. *See* Ex. 11 at 3. Mr. Ulrich failed to do so. *See id*. Accordingly, he failed to timely exhaust his administrative remedies, and his claims are barred.

## Conclusion

For the reasons stated above, Defendant respectfully requests that the Court dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(1) or 12(b)(6) or, in the alternative, enter summary judgment for Defendant.

    Respectfully submitted,

    Alejandro Mayorkas
    Secretary of Homeland Security

    By his attorney,

    Nathaniel R. Mendell
    Acting United States Attorney

    */s/ Annapurna Balakrishna*
    Annapurna Balakrishna
    Assistant United States Attorney
    One Courthouse Way, Suite 9200
    Boston, Massachusetts 02210
    (617) 748-3111
    annapurna.balakrishna@usdoj.gov

## Certificate of Service

I certify that I caused a copy of this document to be sent via First Class Mail to Plaintiff, who is pro se, on the date of filing.

    */s/ Annapurna Balakrishna*
    Annapurna Balakrishna
    Assistant United States Attorney